John J. Nixon *vs.* Charles M. Connery, *Admr., et al.*

JUNE 20, 1945.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a suit in equity begun by a bill of complaint against the respondent Charles M. Connery, as administrator of the estate of Lawrence F. Fitzgerald, deceased intestate, and against any claimants that there might be to that estate. It is before us on complainant's appeal from a final decree denying and dismissing the bill of complaint.

The complainant asserted in his bill that, by reason of an agreement between them, he was entitled to all of the property owned by the deceased at the time of his death. The complainant alleged that this agreement was made after the death of Fitzgerald's wife and was that, if he would live with Fitzgerald and care for him, when he needed care, until the latter's death, he should then have all of Fitzgerald's property; and that he had performed his part of the agreement. The administrator in his answer denied that there was any such agreement.

It was also alleged in the bill, and admitted by the administrator's answer, that the decedent at the time of his death had a leasehold interest in certain land and the buildings thereon, in the town of Bristol in this state, which leasehold interest had belonged to himself and his wife as joint owners but of which he had become the sole owner upon her death. It was also alleged in the bill, and admitted in the administrator's answer, that the decedent at the time of his death owned certain other personal property inventoried at $5027.77.

The substantial relief prayed for in the bill was that specific performance of the alleged agreement should be enforced "against the heirs, legatees, devisees or distributees" of the decedent, "whether known or unknown and against the respondent Administrator"; and that he should be directed, upon payment of debts and administration expenses, to transfer the balance of the estate subject to his control to the complainant.

The complainant also alleged that he had been frequently told by the decedent that the latter had no relatives to succeed to his property. The complainant further alleged that he himself had no knowledge of the existence or addresses of any such relatives or persons who might be entitled to claim as heirs or distributees of the decedent. He therefore prayed not only that a subpoena to the respondent administrator be issued, but also that notice be given, by publication in a certain newspaper published in the town of Bristol,

to all persons who might be interested in the estate of the decedent, as heirs, devisees, legatees, distributees or otherwise, of the pendency of the bill of complaint and ordering them to make answer thereto within a certain time. This prayer was granted by an order of a justice of the superior court filed April 4, 1942, the date of the filing of the bill.

Notice was published in accordance with this order; and, no appearance having been entered or any plea, answer or demurrer filed within the time allowed by such notice, a decree was entered on May 6, 1942 that the bill of complaint be taken as confessed by all unknown heirs, devisees, legatees and distributees of the decedent. The complainant contends that this decree, not having been set aside thereafter, is decisive of his right to the relief prayed for in his bill of complaint.

We find that there is no merit in this contention; that that decree did not affect the merits of the controversy between the complainant and the administrator; and that the burden was on the complainant, in order to be entitled to any of the substantial relief prayed for in his bill, to prove, at least by a preponderance of the evidence, that the decedent made with him the agreement that is set forth in the bill.

It is well settled that such a decree *pro confesso* only operates to prevent any person against whom it has been entered from taking part in the hearing before the court on the merits of the case, and does not operate to prevent him from afterwards claiming the benefit of the rule laid down in *Hazard* v. *Durant*, 12 R. I. 99, at 100. That rule is as follows: "And if a bill be taken *pro confesso* against one of two or more defendants, and the others, making answer, show that it is devoid of equity, it will be dismissed as against all of them."

This court there cited, in support of that rule, *Clason* v. *Morris*, 10 Johns. Rep. 524, and *Frow* v. *De La Vega*, 15 Wall. 552. Those cases fully support that rule, the supreme court of the United States stating in the latter of them, at

page 554, and citing the former case in support of the statement, as follows: "The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike— the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."

In view of the law as laid down in the cases above cited, we are of the opinion that there is no merit in the contention of the complainant in the instant cause that, by reason of the fact that no heir, devisee, legatee or distributee to whom notice by publication was given entered an appearance, he was entitled to the relief against the administrator which is prayed for in the bill. Moreover, the complainant did not, in the superior court, seek any decree against the administrator on that ground but had the cause assigned for hearing on its merits as against the latter and it was so assigned and heard. Nor did he, in his reasons of appeal from the final decree of the superior court, file any reason based on that ground.

Our final conclusion must then depend entirely on whether or not we are convinced, after examining and considering the very conflicting evidence in the cause, that the trial justice was wrong in finding, as he did in his final decision, that the complainant had not proved, by a fair preponderance of the evidence, the agreement alleged in the bill of

complaint and his faithful and full performance of his part thereof.

The complainant testified, in substance and effect, that about eight months before the decedent's death, which occurred very soon after his seventieth birthday, it was agreed between them as follows: that Nixon, who was employed during the daytime, would sleep every night in a room in Fitzgerald's house and would, from the time when Nixon got there until he left in the morning, take care of Fitzgerald, when he needed care; and that if he performed his part of the agreement, until Fitzgerald's death, Nixon should have anything there that then belonged to the former. The complainant testified that he had fully performed his part of the agreement.

Another witness testified that Fitzgerald said to him, in the presence of and referring to the complainant: "If Jack will only come and live with me as long as I live, I will give Jack everything I have got." A third witness testified that Fitzgerald said to him that he had made an agreement with Nixon, when the latter had gone to live with him and take care of him for the rest of his life, that he would, when he died, leave everything to Nixon for the rest of the latter's life.

A fourth witness testified that about six weeks before Fitzgerald's death, the latter said that he and Nixon were getting on well together and that if Nixon stayed with him and he died before Nixon, the latter was to have everything. According to a fifth witness, Fitzgerald said, some time after Nixon went to live with him and referring to Nixon: "Jack is living with me now and we get along fine. If he stays with me I have agreed to give him everything I have got when I die. I have asked him before but he wouldn't come out, but he finally came."

On the other side there was much testimony, by numerous witnesses, of statements made by the complainant and conduct by him both before and after the death of Fitzgerald that were wholly inconsistent with the making of

any such agreement and his performance of what would have been his obligations thereunder. We see no sufficient reason for stating and discussing this testimony in detail.

The conflict in the testimony raised a clear issue of credibility for the trial justice to decide and he decided it in favor of the respondent administrator. In his decision, after discussing the material evidence fairly and in considerable detail, he came to the conclusion therefrom that the complainant had not proved by a fair preponderance of the credible evidence the two requisites for a decree in his favor, *viz.*, that the agreement alleged in the bill of complaint was made between the complainant and Fitzgerald, the decedent, and that the former had faithfully and fully performed the terms of such agreement on his part to be performed. The trial justice therefore decided that the bill of complaint should be denied and dismissed; and a final decree was entered accordingly.

We have considered the testimony, which is conflicting, and the arguments of counsel for the respective parties and as a result we cannot say that the decision of the trial justice was clearly wrong. We are therefore of the opinion that the decree based thereon, in favor of the respondent, denying the relief prayed for in the bill of complaint, should be affirmed.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Philip S. Knauer, Anthony Grilli, John R. Ferguson,* for complainant.

*William T. O'Donnell, Ralph M. Greenlaw, Edwin J. Tetlow,* for respondent Connery.

*Lucien Capone,* Town Solicitor, for town of Bristol.